UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

MARY ELAINE MILLER                          Case No. 05-24725
a/k/a MARY E. MILLER, M.D.,                 Chapter 13
f/d/b/a MARY MILLER, M.D.,                  Hon. Daniel S. Opperman

      Debtor.
_____/

OPINION RE: OBJECTIONS TO CONFIRMATION

Before the Court are numerous objections to confirmation raised by Ivinson

Memorial Hospital, the Debtor's largest unsecured creditor, to the Debtor's proposed

Chapter 13 plan. This opinion addresses the objections involving the proposed payment

of the Debtor's student loans outside the plan and the continuation of contributions to the

Debtor's 401(k). For the reasons stated, the Court sustains the objection regarding the

payment of the student loans and overrules in part the objection as to the 401(k)

contributions.

Background

In September 2005, Mary Elaine Miller ("Debtor") filed a Chapter 7 bankruptcy

petition. Ivinson Memorial Hospital ("Hospital") moved to dismiss the Debtor's Chapter 7

case pursuant to 11 U.S.C. § 707(a). On August 31, 2007, the Court granted the Hospital's

motion but held its decision in abeyance pending the Debtor's successful conversion to a

Chapter 13 case and then confirmation and completion of a Chapter 13 plan. On

September 10, 2007, Debtor moved to convert her Chapter 7 case to Chapter 13, which

was initially opposed by the Hospital. On June 27, 2008, the Court granted Debtor's motion

to convert.

Debtor filed a proposed Chapter 13 plan (the "Plan") on July 10, 2008. The Hospital filed objections to confirmation of the Debtor's Plan on August 19, 2008. A confirmation hearing was held on September 11, 2008. During the hearing, the parties requested that a briefing schedule be established to enable the parties to more thoroughly address various legal objections. The parties timely submitted their briefs in accordance with the briefing schedule set by the Court. A status conference was held on October 30, 2008. At the status conference, the parties indicated that they were close to resolving certain objections but that other objections could not be resolved. The parties suggested that a ruling by the Court on two substantive issues could provide them with additional guidance to enable them to effectively address the unresolved objections.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(a), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## Discussion

Debtor's chapter 7 petition was filed prior to the amendments made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). As such, this case is controlled by the Code as it existed pre-BAPCPA. All references to the Code is this opinion are to the relevant Code sections in existence prior to the effective date of BAPCPA.

A.    The Plan

Under her Plan, Debtor proposes to make payments to the Chapter 13 Trustee for a period of five years. Debtor proposes to fund her Plan by submitting $1,435.00 per

2

month to the Trustee. Total plan payments are estimated to equal $87,719.34. After payment of fees for the Trustee and Debtor's attorney, the Plan estimates total funds for unsecured claims at $80,710.57. Under the Plan, nonpriority unsecured claims are estimated to total $360,818.73, which amount is based on all of the claims listed on the Debtor's Schedule F. The estimated dividend to unsecured creditors is 22%.

In July 2008, Sallie Mae, Inc., on behalf of United Student Aid Funds, Inc., filed a proof of claim in the amount of $88,616.83. The claim indicates monthly payments as $830.88. Under the Plan then, Debtor proposes to continue to make the regular monthly payment directly to the student loan claimant outside the plan. This results in a total of $49,852.88 being paid on the student loan claim during the life of the plan. The student loan claimant would receive an approximate amount equal to 56% on its claim while other unsecured claims would receive a much lower percentage.

The Hospital filed various objections to the Debtor's Plan including that it had not been proposed in good faith. One of the objections raised by the Hospital involves whether the Debtor is contributing all of her disposable income to fund the Plan. Part of this objection concerns the Debtor's payment, outside the plan, of approximately $830.00 per month on her student loans while simultaneously permitting the student loan claimant to share *pro rata* in distributions from the Trustee. The Hospital contends that this treatment violates the "discriminate unfairly" requirement of 11 U.S.C. § 1322(b)(1). In addition, the Hospital objects to the continuation of the Debtor's monthly contributions to her 401(k) of $309.00. The Hospital argues that these funds should be included in the Debtor's disposable income and used to fund her plan to provide a greater dividend to unsecured creditors.

3

In an attempt to resolve some of the Hospital's objections, the Debtor has offered to amend her plan. Under her amended plan, the Debtor intends to treat her student loan debt, which is not in arrears, as a long term debt under 11 U.S.C. § 1322(b)(5) and to clarify that the student loan claimant will not be entitled to receive any portion of the distributions made by the Trustee. Debtor points out that her amended plan would not modify the Debtor's intention to maintain direct payments to the student loan claimant outside the plan. With regard to her 401(k) contributions, Debtor contends that this is a legitimate expense, which should be deducted from her disposable income. Debtor asserts that she should be allowed to continue to make these contributions because they are reasonable and necessary due to the unique circumstances of her situation.

B.    Analysis

1.    Student Loans

a.    Classification of a student loan under § 1322(b)(5) is subject to the requirements of § 1322(b)(1)

The first issue the Court must address is whether long term nondischargeable student loan claims under § 1322(b)(5) are subject to the unfair discrimination requirements of § 1322(b)(1). Although there is no controlling authority in the Sixth Circuit on this issue, it has been addressed by other courts. The decisions indicate that two competing positions exist in the case law. *In re Labib-Kiyarash*, 271 B.R. 1889, 193 (B.A.P. 9th Cir. 2001) (collecting and explaining existing case law on the two different approaches that have been created to determine whether a Chapter 13 plan may be confirmed when it calls for the classification of student loan debt under § 1322(b)(5) that results in a higher dividend on a student loan claim than the dividend provided to other

4

unsecured creditors).  The Debtor contends that a plan provision may invoke

§ 1322(b)(5) without complying with § 1322(b)(1).  The Hospital disagrees.

The courts are divided on the interaction between §§ 1322(b)(1) and (b)(5)

relative to nondischargeable student loan debt.  *In re Labib-Kiyarash*, 271 B.R. 189, 193

(B.A.P. 9th Cir. 2001).  The "majority of courts have read these two provisions together

and require a plan proposing to deal with long term debt under (b)(5) to also pass the

unfair discrimination test under (b)(1)."  *In re Labib-Kiyarash*, 271 B.R. at 193 (B.A.P.

9th Cir. 2001).  The majority position reasons that

> [i]f Congress had wanted courts not to consider whether putting unsecured
> creditors in a separate class and providing for full monthly payments on
> the unsecured creditors' claims during the course of the plan constituted
> unfair discrimination, Congress would have drafted section 1322(b)(5) to
> read 'notwithstanding paragraphs (1) and (2) of this subsection, a plan
> may provide for the curing of any default . . . and maintenance of
> payments. . . .' Congress did not draft the statute in such a manner.

*In re Labib-Kiyarash*, 271 B.R. at 193 (quoting *In re Colley*, 260 B.R. at 563-67) (other

citations omitted).  Another reason advanced by the majority position is premised on  a

statutory rule of construction and provides that:

> Congress explicitly exempted only co-signed consumer loans from 'unfair
> discrimination' scrutiny in § 1322(b)(1) itself.  The doctrine of *inclusio
> unius exclusio alterious* ('the inclusion of one is the exclusion of another')
> mandates the conclusion that Congress knew how to except long-term
> student loan debts from § 1322(b)(1) but chose not to.

*In re Colley*, 260 B.R. 532, 537 (Bankr. M.D. Fla. 2000) (citing *In re Coonce*, 213 B.R.

344, 348 (Bankr. S.D. Ill. 1997)).

Conversely, a minority of courts have concluded that "as a matter of law

compliance with § 1322(b)(5) satisfies the unfair discrimination test under § 1322(b)(1)."

*In re Labib-Kiyarash*, 271 B.R. at 194.  In support of this rationale, the minority position

5

explains that

> placing unsecured creditors, like those holding student loans, into a separate class and permitting debtors to maintain their payments to them at the full contract rate, as expressly permitted by section 1322(b)(5), is not 'unfair' discrimination. [T]his must be the result intended by Congress; otherwise, how could a debtor's plan provide for the 'maintenance of payments' on 'unsecured' claims under section 1322(b)(5) if it were considered 'unfair discrimination' under section 1322(b)(1). In order to give meaning to both subsections, [a court must] find that the discrimination proposed . . . is not unfair.

*Id.* (quoting *In re Chandler*, 210 B.R. 898, 903-04 (Bankr. D.N.H. 1997)). Courts that adopt this position find it "unnecessary to separately analyze whether a debtor's plan complie[s] with § 1322(b)(1) when the plan otherwise satisfie[s] § 1322(b)(5)." *Id.* In addition, the minority position is supported by "various policy-based rationales for creating an exception to § 1322(b)(1) for long-term nondischargeable debts." *In re Colley*, 260 B.R. 532, 536 (Bankr. M.D. Fla. 2000) (explaining the policy-based reasons advanced by some courts).

The Court finds the majority view persuasive and to be more in line with the statutory language and framework of § 1322(b). As aptly explained by the *Coonce* court:

> A careful examination of § 1322(b) reveals that its provisions are cumulative unless otherwise provided. An interpretation allowing preferential treatment of student loan debts so long as they are classified as long-term indebtedness under § 1322(b)(5) would render subsection (b)(1) superfluous. Taken to its logical conclusion, such an interpretation would require that any designation or plan provision made pursuant to a subsection of § 1322(b) would be *per se* exempt from the 'fair discrimination' requirement of § 1322(b)(1). Obviously, this was not Congress' intent when it drafted § 1322(b).

*In re Coonce*, 213 B.R. at 347. This Court adopts the majority position and holds that a debtor may use § 1322(b)(5) to maintain long-term student loan payments as long as

6

the plan provision satisfies the unfair discrimination requirement of § 1322(b)(1).  In light of this determination, the Court must now address whether the Debtor's plan unfairly discriminates in violation of § 1322(b)(1).

   b.  Unfair discrimination standard under § 1322(b)(1)

Under § 1322(b)(1) a Chapter 13 plan may —

> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but *may not discriminate unfairly* against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims[.]

11 U.S.C. § 1322(b)(1) (emphasis added).

  The Bankruptcy Code does not provide a definition or a standard for the phrase "discriminate unfairly."  As a result, this phrase has been heavily litigated with complicated results.  When faced with this issue, the courts have created multi-factor tests to determine whether a debtor's proposed classification fulfills § 1322(b)(1). 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 149.1, at 149-1-13 (3d. ed. 2000 & Supp. 2004) (collecting cases and explaining the numerous tests formulated by the courts). The Sixth Circuit Court of Appeals has not addressed the issue.

  The Court notes that the case of *In re Bentley*, 266 B.R. 229 (1st Cir. BAP 2001) is often cited in this area.  In *In re Bentley*, the First Circuit Bankruptcy Appellate Panel articulated a framework for analyzing the issue of unfair discrimination against the backdrop of chapter 13 bankruptcy policy. The court in Bentley started with the premise that in using "fairness" as a standard in § 1322(b)(1), "Congress did not intend to leave courts with a notion so abstract as to supply no definite content or real guidance or to require each judge to define fairness according to his or her own lights...." 266 B.R. at

7

239.  Instead, Congress must have intended "fairness" to have been interpreted by reading § 1322(b)(1) "as mandating the standard of fairness that is implicit in Chapter 13, the context in which the term is used." Id.; see also In re Colfer, 159 B.R. at 608 & n. 20 (fairness analysis requires consideration of "the impact of the discrimination on Congress' chosen statutory definition of the legitimate interests and expectations of the parties-in-interest to Chapter 13 proceedings" including distributional priorities, fresh start and expressly permitted classifications).

Under the approach the Bentley court employed, the core principles and policies of chapter 13 provide a "baseline" for evaluating a plan that proposes to deviate from the baseline. See 266 B.R. at 240. Plans that propose to deviate from the baseline to the detriment of a class of creditors that are not offset by some benefit to the disfavored class are more likely (though not necessarily) to be "unfair" under § 1322(b)(1). On the other hand, treatment that offers each class benefits that are equivalent to those received at baseline results in treatment is more likely to be deemed "fair." Id. In reviewing a chapter 13 plan that proposed to provide substantially more favorable treatment to a student loan claim to the detriment of general unsecured claims, the Bentley court identified four (4) baselines warranting consideration:

1. Equality of distribution reflects the general expectation that, absent an express grant of priority, unsecured creditors will share equally in any dividend. As a result of this principle, "fairness in Chapter 13 requires equality of distribution among nonpriority unsecured creditors, and the burden of justification is on those who propose plans to the

contrary." Id. at 240.

2. Nonpriority of student loans incorporates the notion that the Code does not grant student loans priority status. The baseline expectation here is simply that nothing in the Code mandates treating student loans more favorably than general unsecured claims.

3. Contributions: mandatory v. optional expresses the chapter 13 requirement that a debtor devote all of his or her projected disposable income to a plan if the plan does not pay the full amount of allowed unsecured claims. The expectation emanating from that requirement is that unsecured creditors would share pro rata from distributions funded with the debtor's mandatory contributions.

4. A fresh start for honest debtors is one of the Bankruptcy Code's fundamental purposes. This baseline is tempered against the notion that Chapter 13 does not contemplate that debtors "will necessarily emerge from Chapter 13 entirely free of student loan obligations." Id. at 242.

The *Bentley* Court guidelines certainly provide the Court with a framework to analyze this case. As an additional source, the Court notes that Judge Lundin in his treatise, Chapter 13, Volume 2, § 159.1 page 159-1 to 159-3 identifies 3 Rules as articulated by Professor Boshkoff:

> **Rule 1**: A debtor's proposal concerning the classification of unsecured claims should be accepted as long as it represents a plausible decision with regard to the debtor's personal or business obligations.
> **Rule 2**: During the first 36 months of a plan, separate classification and favored treatment of insider or nondischargeable claims should not be permitted except with respect to claims that are nondischargeable under §§ 523(a)(5) (alimony and support) or 1328(a)(3)(restitution).

9

**Rule 3**: Between months 37 and 60 of a plan, separate classification and favored treatment of insider and nondischargeable claims should be permitted.

Applied here, the Debtor's Plan as proposed does not meet either the first and second guidelines of *Bentley,* or Rule 2 and 3 of Judge Lundin. The Plan does meet the 4th guideline of *Bentley*, as well as the 1st rule of Judge Lundin. If amended along the lines of the 2nd and 3rd rule of Judge Lundin, Debtor's Plan could very well be confirmed. This is especially true given the pre-BAPCPA nature of this case. As a pre-BAPCPA case, the Debtor would normally only have to propose a 36-month plan, instead of the 60-month plan as is the case here.

  2.  <u>401(k) Contributions</u>

Under her Plan, the Debtor proposes to continue to make monthly contributions of $309.00 to her 401(k) over the life of the Plan. The total estimated amount of the 401(k) contributions equals $18,540. The Hospital objects to the Debtor's continuation of these voluntary contributions to her 401(k). The Hospital argues that the 401(k) contributions must be included in the Debtor's disposable income. In support of its position, the Hospital relies on *Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429 (6th Cir. 2004). The Debtor disagrees. The Debtor contends that these 401(k) contributions are a reasonably necessary expense for her support that may be excluded from disposable income. In support of her position, the Debtor relies on *In re Beckerman*, 381 B.R. 841 (Bankr. E.D. Mich. 2008).

Disposable income is defined as "income received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2).

*In re Behlke* involved the appeal of the bankruptcy court's decision to include the debtors' voluntary contributions of $460 per month to their 401(k) as disposable income in order to determine their ability to pay their creditors out of future income. The Sixth Circuit Court of Appeals had previously held under *Harshbarger v. Pees* (*In re Harshbarger*), 66 F.3d 775, 777-78 (6th Cir. 1995), that a "debtor's voluntary repayment of her loans to her ERISA-qualified profit sharing account should be treated as part of the disposable income in the bankruptcy estate." *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004). The *Behlke* court determined that the reasoning in *Harshbarger* was "equally applicable to the debtor's voluntary contributions to a 401(k) or other retirement plan." *Id.* The court then reviewed the bankruptcy court's findings, which recognized that "the debtors had accumulated retirement savings as well as other personal and real property of potentially significant future value." *Id.* at 436. The *Behlke* court found no clear error in the bankruptcy court's finding "that the 401K contribution in this case was not reasonably necessary to the maintenance and support of the debtors or their dependent and that it should be included as disposable income." *Id.*

Recently in *In re Beckerman*, 381 B.R. 841 (Bankr. E.D. Mich. 2008) Judge Shapero addressed whether under *Harshbarger* and *Behlke* a *per se* rule had been established that voluntary contributions to a 401(k) or other retirement plan must be always included in a debtor's disposable income. As part of its analysis, the *Beckerman* court considered the numerous decisions of the courts in and outside of the Sixth Circuit that had reached such a conclusion as well as the "small, but growing number of courts" that had reached the opposite conclusion by choosing to engage in a "case-by-case approach under which retirement contributions may be found reasonably

11

necessary, or not, depending upon the unique circumstances of the debtors' situation.

*Id.* at 845-846. The court then made the following determination based on its review of

Sixth Circuit precedent:

> Although *Behlke* and *Harshbarger* have been broadly interpreted to
> require wholesale inclusion of 401(k) contributions in a disposable income
> analysis, this Court does not share that view. The *Behlke* court
> methodically set forth the applicable standards of review, observing that
> findings of fact were reviewed for clear error, while conclusions of law
> were reviewed *de novo*. The court then undertook an analysis of the
> bankruptcy court's findings of fact. Rather than adopt a per se rule
> requiring the inclusion of 401(k) contributions in disposable income, the
> court instead reviewed the reasonableness of the contributions against the
> circumstances of the debtor's financial situation and found no clear error.
> Voluntary contributions under those facts, where the debtors had
> accumulated a significant amount in retirement savings as well as
> personal and real property of some apparent future consequence, were
> not reasonably necessary for the maintenance and support of the debtors
> and thus could not be excluded from a disposable income calculation.
>
> . . . .
>
> This court is persuaded that Sixth Circuit precedent does not require that
> in all instances voluntary contributions to a retirement plan are not
> necessary expenses for determining disposable income in a . . . chapter
> 13 plan. Instead, . . . the reasonableness of a [d]ebtor's expenses,
> including 401(k) contributions, must be determined on a case-by-case
> basis looking at the totality of [a] [d]ebtor's individual circumstances.

*In re Beckerman*, 381 B.R. at 847-48. Under this inquiry, the relevant factors a court

may consider include:

> (1) the amount of a debtor's existing retirement savings;
> (2) the debtor's age and time left until retirement;
> (3) level of yearly income;
> (4) overall budget;
> (5) amount of monthly contributions;
> (6) needs of any dependents; and
> (7) other constraints which make it likely that retirement contributions are
> reasonably necessary expenses for the debtor.

*Id.* (citing *Hebbring v. U.S. Trustee*, 463 F.3d 902, 907 (9th Cir. 2006) (citation omitted)).

The Debtor requests that the Court adopt and apply the *Beckerman* standard to this case. The Hospital recognizes the ruling made in *Beckerman*, but the Hospital contends that even under the *Beckerman* analysis, the Debtor's 401(k) contributions are not a reasonably necessary expense and should be included as disposable income and used to fund the Plan.  The Court is persuaded by and adopts the sound reasoning contained in *Beckerman.*  Therefore, the Court holds that voluntary retirement contributions could be determined to be a reasonably necessary expense and excluded from disposable income depending on the totality of a debtor's individual circumstances.

Since the standard the Court adopts today is intensively fact driven, an evidentiary hearing must be held to allow the Court to engage the proper totality-of-the-circumstances analysis.  Unless the parties resolve this objection, it will be one of the matters the Court considers at the evidentiary hearing currently scheduled to occur on December 19, 2008 at 1:30 p.m.

Signed on November 18, 2008

                                   /s/ Daniel S. Opperman
                                  Daniel S. Opperman
                                  United States Bankruptcy Judge

13